UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ABDUL N. PEAY,<br><br>          Petitioner,<br>     v.<br><br>WARDEN,<br><br>          Respondent. | PRISONER<br>3:10-CV-00085 (CSH) |

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Abdul N. Peay, an inmate currently confined at the Carl Robinson Correctional Institution in Enfield, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his amended petition for writ of habeas corpus (or, "Amended Petition"), which is the operative petition in this document, [Doc. 20], Peay challenges his 2003 conviction for: (1) burglary in the first degree in violation of C.G.S.A. § 53a-101(a)(1) and (a)(2); (2) assault in the second degree in violation of C.G.S.A. § 53a-60(a)(2); and (3) interfering with a police officer in violation of C.G.S.A. § 53a-167(a)(a). For the reasons that follow, the Amended Petition is denied.

**I.   FACTUAL BACKGROUND**

In a July 11, 2006 decision, the Connecticut Appellate Court determined that the jury in the trial which rendered his above-mentioned 2003 conviction reasonably could have found the following facts.

Edwin Carter was the superintendent of an apartment building in Hartford. He lived in an apartment in the basement of the building near the laundry room. Most areas of the apartment

building, including the laundry room were not open to the public. Tenants and authorized persons had keys with which to access these private areas. *State v. Peay*, 96 Conn. App. 421, 423-24, *cert. denied*, 280 Conn. 909, 908 A.2d 541 (Conn. App. Ct. 2006).

On April 17, 2003, at approximately 11:30 p.m., Carter heard noises in the laundry room and went to investigate. When he reached the doorway, he saw Peay, who was not a tenant in the building, standing near a coin-operated laundry machine. Peay was trying to pry open the coin box on the machine. Peay approached Carter and struck him in the head with a crowbar causing a significant injury. Peay ran from the laundry room and Carter pursued him, at one point pulling Peay to the ground. When the two men reached the lobby, they continued to struggle with each other. Peay attempted to strike Carter with a screwdriver and a Sheetrock knife and bit Carter on the chest. Peay broke a glass door in the lobby and left the building; Carter then pursued Peay to the lawn in front of the building and shouted for assistance. Carter was able to restrain Peay against a fence until the police arrived. *Id.* at 424.

Police officers, upon arriving at the scene, separated the two men. The officers spoke to Carter, who recounted these events. They also spoke with other witnesses at the scene and investigated the laundry room, finding evidence that Peay had been trying to pry open the coin boxes on two laundry machines. Based on the interviews and their investigation of the laundry room, the officers decided to arrest Peay and to take him into police custody. When they attempted to handcuff him, Peay became hostile and uncooperative. The officers physically struggled with Peay as they handcuffed him. Peay verbally threatened the officers and either disobeyed or was slow to comply with commands. *Id.* at 424-25.

## II.  PROCEDURAL BACKGROUND

On December 5, 2003, following a jury trial in the Connecticut Superior Court for the Judicial District of Hartford, Peay was convicted of two counts of burglary in the first degree, one count of assault in the second degree and one count of interfering with a police officer.  Peay was sentenced to a total effective term of imprisonment of twelve years.  *Id.* at 423, 423 n.1; *see also State v. Peay*, No. H14CR030570570, 2004 WL 575128 at *1 (Judicial District of Hartford) (Conn. Super. March 5, 2004).

On direct appeal, Peay challenged his conviction on four grounds:  (1) that his conviction on two counts of burglary in the first degree violated the constitutional prohibition against double jeopardy; (2) that the trial court improperly disallowed evidence of two 911 calls regarding the incident; (3) that there was insufficient evidence to support his conviction on any of the charges of which he had been convicted; and (4) that the trial court had improperly relied on an inaccurate presentence investigation report at the time of sentencing.  The Connecticut Appellate Court, however, after a review of the factual background and procedural history of the matter, affirmed Peay's conviction.  *Id.* at 423.  The Connecticut Supreme Court thereafter denied Peay's petition seeking certification.  *See State v. Peay*, 280 Conn. 909 (Conn. 2006).

In March 2004, Peay filed an application for sentence review with the Sentence Review Division of the Connecticut Superior Court.  The Sentence Review Division reviewed the record as a whole, determined that the sentence was in accordance with the applicable provisions of the Connecticut Practice Book and affirmed the sentence, stating that Petitioner's "offense did not begin as a particularly serious crime, but the assault upon the victim [i.e., Carter] compounded an already bad situation," and concluding that "[t]he court properly took this and [Petitioner's] criminal history

3

into consideration." *See State v. Peay*, No. H14HCR03569925, 2006 WL 3691571 at *2 (Judicial District of Hartford) (Conn. Super. Ct. Nov. 29, 2006).  Thus "[i]n reviewing the record as a whole the [Sentencing Review] Division [found] that the sentencing court's action were in accordance with the parameters of Connecticut Practice Book § 43-23 *et seq.*" *Id.*

Peay thereafter filed a writ of error challenging the Sentencing Review Division's decision. *See State v. Peay*, 111 Conn. App. 427, 428 (Conn. App. 2008). The Appellate Court determined that Peay had failed to adequately brief his claims and did not provide the court with an adequate record for review; accordingly, the Appellate court dismissed Peay's writ of error.  The Connecticut Supreme Court denied Peay's subsequent petition for certification.  *See State v. Peay*, 291 Conn. 915 (2009).

In March 2005, Peay filed a petition for writ of habeas corpus in Connecticut Superior Court. In his fifth amendment habeas petition in that case, filed with the assistance of appointed counsel, Peay proceeded under the theory that he was the victim of ineffective assistance of counsel during both the trial that resulted in his underlying conviction and on direct appeal.  Resp't's Mem. App. S.  The court denied Peay's petition for habeas corpus.  *See Peay v. Warden*, No. 054000392S, 2009 WL 6022055 (Judicial District of Tolland) (Conn. Super. Ct. Nov. 18, 2009).  Peay's subsequent appeal to the Connecticut Appellate Court was dismissed on May 10, 2011.  The Connecticut Supreme Court denied certification on June 13, 2011.

Thereafter, Peay filed in this Court the petition for habeas corpus that is the subject of this Ruling.

### III.  STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court

conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court; "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law,

5

but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.* Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

## IV.   DISCUSSION

In his Amended Petition, Peay challenges his conviction on three grounds: (1) his conviction on two counts of burglary in the first degree violates his constitutional right to be free from double jeopardy, (2) the trial court abused its discretion when it excluded the 911 tapes from the trial and (3) his sentence is illegal because he was sentenced as a career criminal without being afforded an opportunity to refute the charge.

### A.   **Double Jeopardy**

Peay first argues that his conviction on two counts of burglary in the first degree violates his right to be free from double jeopardy. The respondent contends that relief should be denied on this

claim because the state court reasonably applied established federal law.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall be "subject for the same offense to be twice put in jeopardy of life and limb." Peay was tried only once. Thus, this prohibition is not applicable. The Double Jeopardy Clause also prohibits multiple punishments for the same offense in a single proceeding. *See Jones v. Thomas*, 491 U.S. 376, 380-81 (1989). This latter protection is "limited to ensuring that the total punishment [does] not exceed that authorized by the legislature." *United States v. Halper*, 490 U.S. 435, 450 (1989).

To determine whether convictions under separate sections of federal criminal law arising from involvement in a single event or common series of events violate the Double Jeopardy Clause, the court must consider: (1) the language of the statutes; (2) a comparison of the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932); and (3) any express congressional intent regarding multiple punishments. *See United States v. Muhammad*, 824 F.2d 214, 218 (2d Cir. 1987). The *Blockburger* test examines whether one offense requires proof of a fact not required to establish the other. If not, the two offenses are the same for double jeopardy purposes. *See* 284 U.S. at 304. The *Blockburger* test, however, is merely a rule of statutory construction that should be applied only where legislative intent is not clear. With regard to cumulative sentences imposed in one trial, the Double Jeopardy Clause merely prevents a court from imposing a sentence that exceeds what the legislature intended. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

In analyzing this claim, the Connecticut Appellate Court applied the *Blockburger* test and state court precedent applying the principles set forth in *Missouri v. Hunter*. Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to

federal law. *See Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001) (ruling is contrary to established federal law when state court applies law contradicting Supreme Court precedent).

The court next must determine whether the Connecticut Appellate Court's application of federal law was objectively unreasonably. This determination depends on the nature of the particular rule. If the rule is specific, the parameters of reasonable application are narrow. If, however, the rule is more general in scope, there may be a substantial amount of discretion in applying the rule to the facts of a particular case. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The Double Jeopardy Clause has general scope. The Supreme Court has not specified the manner in which the court determines whether the legislature intended to permit multiple punishments.

The Connecticut Appellate Court considered the two subsections of the statute and determined that each required proof of something that the other did not. Section 53a-101(a)(1) provides that a person is guilty of burglary in the first degree when "such person enters or remains unlawfully in a building with intent to commit a crime therein and is armed with explosives or a deadly weapon or dangerous instrument." Section 53a-101(a)(2) provides that a person is guilty of burglary in the first degree when "such person enters or remains unlawfully in a building with intent to commit a crime therein and, in the course of committing the offense, intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone." Conn. Gen. Stat. § 53a-101(a). The Connecticut Appellate Court concluded that subsection (1) required proof that Peay was armed with a dangerous instrument, while subsection (2) required proof that Peay intentionally, knowingly or recklessly inflicted bodily injury on Carter. No intent or injury was required for subsection (1)

and no dangerous instrument was needed in subsection (2).  These distinctions were reflected in the charging document.  Thus, the Connecticut Appellate Court found that the two subsections were separate offenses under the *Blockburger* test.  *Peay,* 96 Conn. App. at 427-29, 900 A.2d at 583-84.

The Connecticut Appellate Court also rejected any possible argument that, by including the subsections within the same statute, the legislature intended the two subsections to constitute only one offense.  The court noted that the Connecticut Supreme Court had previously rejected this argument, holding that the language of the provisions, not their location, indicates whether the legislature intended to create separate crimes.  *Id.* at 429 n.6, 900 A.2d at 584 n.6.  Peay did not present any support for a contrary conclusion.

This Court concludes that the Connecticut Appellate Court reasonably applied federal law in analyzing this claim and determining that the Double Jeopardy Clause was not violated.  The amended petition for writ of habeas corpus is denied as to the first ground for relief.

**B.**     **Exclusion of 911 Tapes**

Peay next contends that the trial court improperly excluded from evidence two 911 tapes related to the incident underlying his arrest.  The respondent argues that Peay cannot obtain federal review of this claim because the claim is a state law evidentiary claim and does not constitute a basis for federal habeas corpus relief.

Peay presented this claim to the Connecticut Appellate Court as a violation of state evidentiary law, not as the violation of a constitutionally protected right.  *See* Pet'r's Brief on direct appeal, Resp't's Mem. App. C, at 8-18.  Peay includes the same state law challenge in his amended federal petition.

Federal habeas corpus relief is not available for errors of state law.  *Estelle v. McGuire*, 502

9

U.S. 62, 67-18 (1991). This includes erroneous state court rulings on the admissibility of evidence. *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006). A federal court may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that the error was "so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (requiring federal court to consider possible evidentiary errors in state court to ascertain whether state appellate court decision finding no constitutional defect at trial was objectively reasonable).

Peay does not challenge the constitutionality of the state evidentiary laws. Rather, he argues that the trial court abused its discretion and misapplied the state law. A criminal defendant does not have an unlimited right to present relevant evidence. The right is subject to "reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The restrictions include state and federal rules of evidence "designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). If this Court concludes that the state court decision was a proper application of state evidentiary rules, the petition must be denied on this ground. A proper application of a constitutional state law cannot be unconstitutional. *See, e.g., Brooks v. Artuz*, No. 97 CIV. 3300(JGK), 2009 WL 1532918, at *6 (S.D.N.Y. Oct. 17, 2000) (noting that petitioner failed to demonstrate an error under state evidentiary law, "much less" any constitutional error); *Jones v. Stinson*, 94 F. Supp. 2d 370, 391-92

(E.D.N.Y.) (federal court did not reach constitutional analysis because state court evidentiary ruling was not reversible error under state law), *rev'd on other grounds*, 229 F.3d 112 (2d Cir. 2000).

Natalee Kelly testified at Peay's trial. During her testimony, she stated that she had made a 911 call after observing the struggle between Peay and Carter. After Kelly finished testifying and had been released, Peay attempted to offer the purported recording of Kelly's 911 call into evidence for impeachment.[1] The prosecutor would not stipulate that the caller was Kelly. *Peay*, 96 Conn. App. at 431-32, 900 A.2d at 585–86. The trial court informed Peay that, if he intended to offer the recording, he would have to authenticate it. Peay would have to subpoena Kelly as a witness, have her listen to the recording and then testify whether her voice was on the recording. Although Peay stated several times that he intended to subpoena Kelly, he did not do so. When specifically questioned by the trial court, Peay stated he was not going to subpoena Kelly. Because Peay did not authenticate the recording through the testimony of Kelly or someone familiar with her voice, the trial court excluded the recording from evidence. Resp't's Mem. App. U, Trial Transcript 12/3/03, at 8, 12, 14, 16.

The caller on the second 911 recording was unknown. The caller states that she lived in the apartment building and observed Carter fighting with someone on the front lawn. She thought Carter was holding a weapon. The dispatcher told her that the police were en route. Peay asked the trial court to infer the following from this call: the caller lived in the building, the caller made the call as she was looking out her window at the struggle on the front lawn, the call was made after Kelly's call, and the caller's statements were spontaneous and truthful. Peay presented no evidence

---

[1] Kelly testified that she reported to the police that there was a fight outside her apartment. On the 911 tape, the caller stated that there was a big fight. The dispatcher asked, "Outside?" and the caller said yes. *Peay*, 96 Conn. App. at 431-32, 900 A.2d at 585.

concerning the caller's identity or availability to testify. The trial court disallowed the second recording because Peay had not authenticated the recording. *Peay*, 96 Conn. App. at 433-34, 900 A.2d at 586-87.

The Connecticut Appellate Court explained that state law required the recordings be authenticated before they could be admitted as evidence. Authentication required a *prima facie* showing of authorship. The prosecutor had stipulated that the recordings were of 911 calls relating to the incident underlying Peay's conviction. Peay argued that this stipulation was sufficient to authenticate the recordings. The appellate court, however, explained that the recordings were offered for the truth of the matters asserted, not just as evidence that 911 calls were made. Thus, the Connecticut Appellate Court concluded that Peay had not made a *prima facie* showing of authenticity. He had presented no evidence showing that the voice on the first recording was Kelly or that the second recording was a truthful and spontaneous statement. Inferences were insufficient to establish authenticity. *Id.* at 434-36, 900 A.2d at 587-88.

The Connecticut Appellate Court found that the trial court properly excluded the recordings because Peay failed to make a *prima facie* showing of authenticity under state law. This Court cannot grant habeas relief unless that determination was objectively unreasonable. *See Wade v. Mantello*, 333 F.3d 51, 59-60 (2d Cir. 2003) (stating that where the state court did not determine whether the excluded evidence was material, but rather determined that the evidence was properly excluded, the question under AEDPA was whether that decision was objectively unreasonable).

Peay presented no evidence to authenticate either recording. This Court concludes that, absent a *prima facie* showing, the determination of the Connecticut Appellate Court, that the trial court did not abuse its discretion in excluding the recordings, was objectively reasonable.

Accordingly, habeas relief is denied on this ground.

### C. Procedural Default

Finally, Peay argues that his sentence is illegal because he was sentenced as a career criminal without being afforded an opportunity to refute the claim. The respondent contends that Peay procedurally defaulted on this claim in state court and that he cannot demonstrate cause to excuse the default. In addition, the respondent contends that, because Peay was sentenced within the range set forth in the state law, he fails to assert a federal constitutional violation.

A state prisoner who defaults on his federal claim in state court pursuant to an independent and adequate state procedural rule cannot obtain federal habeas review of that claim unless he can demonstrate cause for the default and actual prejudice resulting from the default or he can show that failure to consider the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Application of the procedural default bar is especially appropriate where the state procedural rules mirror the federal rules. *See Beard v. Kindler*, ___ U.S. ___, 130 S. Ct. 612, 618 (2009) (noting inequity in disregarding "state procedural rules that are substantially similar" to federal rules); *Coleman v. Thompson*, 501 U.S. 722, 746 (1991) (Court has held that federal courts should give state procedural rules the same effect they give federal procedural rules).

Peay filed an application for sentence review under the state Sentence Review Act, Conn. Gen. Stat. § 51-194, et seq. This statute was enacted to reduce the disparity in sentences imposed for the same crime by different judges. *See James L. v. Commissioner of Correction*, 245 Conn. 132, 144, 712 A.2d 947, 953-54 (1998). In reviewing the sentence, the Sentence Review Division considers "the nature of the offense, the character of the offender, the protection of the public

interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended." Conn. Practice Book § 43-28.

The Sentence Review Division affirmed Peay's sentence. The memorandum of decision includes the following paragraph: "The state countered by referring to the petitioner's lengthy criminal record. The victim was struck several times in the head. There is nothing that has deterred the petitioner from a life of crime. He is a career criminal." *State v. Peay*, No. H14HCR03569925, 2006 WL 3691571, at *2 (Judicial District of Hartford) (Conn. Super. Ct. Nov. 29, 2006). Peay contends that by this paragraph the Sentence Review Division improperly applied the habitual offender statute without affording him an opportunity to refute the application of the statute.

Peay appealed the Sentence Review Division's decision. The Connecticut Appellate Court dismissed the writ of error regarding the alleged designation as a career criminal because Peay did not specify the statute he claimed was improperly applied and did not provide any meaningful legal analysis of the claim. *State v. Peay*, 111 Conn. App. 427, 430, 959 A.2d 655, 657 (2008), *cert. denied*, 291 Conn. 915, 970 A.2d 729 (2009). Because the Connecticut Supreme Court did not comment in its denial of certification, the Court presumes that the order rested upon the same ground as the decision of the Connecticut Appellate Court. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991). Peay has not rebutted this presumption. Thus, his claim was dismissed as procedurally defaulted in state court.

To overcome the procedural default, Peay must demonstrate cause for failing to raise these claims properly in state court and prejudice resulting from the failure to consider the merits of the claims. To establish cause to excuse his procedural default, Peay must identify some objective factor that prevented him from raising the claim. Such factors include interference by state officials

impeding compliance with state rules or a showing that the factual or legal basis for a claim was not reasonably available to defense counsel. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Peay has identified no such interference. He states that his appellate brief was accepted without notification of these deficiencies, but identifies no duty of the appellate court clerk to review submissions for adequacy. As no state official prevented Peay from filing an adequate brief, he fails to demonstrate cause to excuse his procedural default.

In addition, he fails to demonstrate prejudice. If he were sentenced to the maximum term of imprisonment for each offense and the sentences were ordered served consecutively, Peay could have received a total effective sentence of forty-six years. Instead, he was not sentenced to the maximum term of imprisonment for all offenses and the sentences were ordered concurrent so his total effective sentence was twelve years. The trial judge sentenced Peay within the permissible range on all charges and considered his criminal history. Peay was not charged as a persistent offender pursuant to Conn. Gen. Stat. § 53a-40 and the trial court did not enhance his sentence on that basis. Peay has not shown that this reference to career criminal by the Sentence Review Division influenced their decision that, considering the offenses, Peay's character and the public interest, a sentence of twelve years was inappropriate or disproportionate to other sentences for similar crimes.

Nor can Peay show that failure to consider this claim would result in a fundamental miscarriage of justice, that is, "the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To meet this exception, Peay must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316

(1995). Peay has provided no such evidence. Thus, the failure to consider this claim will not result in a fundamental miscarriage of justice.

## V.  CONCLUSION

Based on the foregoing, Petitioner's [20] Amended Petition for writ of habeas corpus is denied.

It is SO ORDERED.

The Clerk is directed to close the file.


Dated: New Haven, Connecticut
September 9, 2014


                                                        */s/ Charles S. Haight, Jr.*
                                                       Charles S. Haight, Jr.
                                                       Senior United States District Judge